**UNITED STATES v. ONE 1950 PONTIAC COACH AUTOMOBILE, MOTOR NUMBER P–6–TS–46914 et al.**

Civ. No. 2196.

United States District Court, W. D. Kentucky, at Louisville.

Sept. 17, 1952.

David C. Walls, U. S. Atty., Norris W. Reigler, Asst. U. S. Atty., Louisville, Ky., for plaintiff.

William S. Heidenberg, Louisville, Ky., for respondent.

SHELBOURNE, Chief Judge.

The libel in this case was filed September 13, 1951, Libelant alleging that about August 8, 1951, on Preston Highway, near Christie Avenue, in Louisville, Kentucky, a 1950 Pontiac coach automobile and a 22-caliber, 24-inch barrel single shot Remington rifle, were seized by Investigators of the Alcohol Tax Unit; that the automobile was being used by Paul Spencer O'Bryan in the removal, deposit and concealment of 49 one-gallon glass jugs and two five-gallon Army G. I. cans filled with non-taxpaid whiskey and that the Remington rifle was being transported in the automobile. Forfeiture was sought.

Seasonably, Paul Stiles filed his intervening petition, claiming to be the owner of the 1950 Pontiac coach automobile and alleging that at no time did he cause or permit the automobile to be used for any of the purposes referred to in the libel or at any time know of such use and that the operation of the automobile by Paul Spencer O'Bryan was without the knowledge, consent or approval of the intervening petitioner. He sought to be adjudged the owner of the au-

tomobile and entitled to its immediate possession.

Trial was had to the Court without a jury January 28, 1952.

On the evidence heard, the Court makes the following—

## Findings of Fact.

1. On or about December 16, 1950, Charles Stiles, purchased the 1950 Pontiac coach automobile motor number P–6–TS–46914, from Robert Dempsey, Pontiac Dealer at Bardstown, Kentucky. The car was registered in the name of Paul Stiles, brother of Charles Stiles. The Stiles brothers lived together near Raywick, Kentucky, Paul being married and Charles being unmarried.

2. At the time the automobile was purchased Charles Stiles and Paul Stiles each had, with the officers of the Alcohol Tax Unit, a reputation for dealing in untaxpaid whiskey.

3. Paul Stiles loaned the Pontiac automobile to Charles Stiles in order that the latter might attend a Rural Mail Carriers' Convention in California. Instead of taking the car to California, as originally intended, Charles Stiles entrusted the car to Tick O'Bryan in exchange for a newer Ford car owned by Tick O'Bryan.

4. Subsequently, Tick O'Bryan loaned the Pontiac to Paul Spencer O'Bryan, who used the car in violation of the Internal Revenue laws by transporting approximately 49 one-gallon glass jugs and two five-gallon Army G. I. cans filled with non-taxpaid whiskey on or about the 8th of August 1951. The automobile, was on that date, seized by the Investigators of the Alcohol Tax Unit.

5. Paul Stiles, Charles Stiles, Tick O'Bryan and Paul Spencer O'Bryan, each and all, at the time and prior thereto, had reputations among the Officers and Investigators of the Alcohol Tax Unit as being persons engaged in handling untaxpaid whiskey and being violators of the Internal Revenue laws.

6. It is contended by the United States that the interest of Paul Stiles in the Pontiac automobile arose out of a contract of purchase between Charles Stiles and Robert Dempsey providing that the Pontiac automobile would be registered in the name of Paul Stiles and that since Chas. Stiles admitted that he made no investigation, as required by subsection (b) (3) of Section 3617 of Title 18 U.S.C.A., as to the record and reputation of his brother Paul Stiles, in whose name the Pontiac automobile was registered, pursuant to the agreement between Charles Stiles and Robert Dempsey, intervener Paul Stiles was not entitled to the remission sought.

7. The Government further contended, if wrong in that contention, it still remained that Paul Stiles failed again to investigate the reputation and record of his brother Charles Stiles before lending him the Pontiac to drive to California and that had he made such investigation, he would have been informed by the Investigators of the Alcohol Tax Unit that Charles Stiles had a reputation of violating the Internal Revenue laws with respect to non-taxpaid whiskey and that in lending his car under such circumstances, Paul Stiles precluded any right to a remission of the forfeiture of the automobile seized in the hands of any one to whom Charles Stiles had entrusted the car.

8. It is contended by Paul Stiles that he loaned the automobile to his brother Charles Stiles for the purpose of making the trip to California and that Paul Stiles never knew that Tick O'Bryan had possession or was in possession of the car until after the same had been seized in this proceeding and that the position of Paul Stiles is the same in this case as it would be had the car been stolen and used by the thief for transportation of the non-taxpaid whiskey.

The Court makes the following—

## Conclusions of Law.

I. This Court has jurisdiction of this proceeding under the provisions of Title 26, Section 3321, U.S.C.A.

II. Section 3617 of Title 18 U.S.C.A. provides—

"Whenever, in any proceeding in court for the forfeiture, under the internal-revenue laws, of any vehicle or aircraft seized for a violation of the internal-revenue laws relating to liquors,

such forfeiture is decreed, the court shall have exclusive jurisdiction to remit or mitigate the forfeiture.

"(b) In any such proceeding the court shall not allow the claim of any claimant for remission or mitigation unless and until he proves (1) that he has an interest in such vehicle or aircraft, as owner or otherwise, which he acquired in good faith, (2) that he had at no time any knowledge or reason to believe that it was being or would be used in the violation of laws of the United States or of any State relating to liquor, and (3) if it appears that the interest asserted by the claimant arises out of or is in any way subject to any contract or agreement under which any person having a record or reputation for violating laws of the United States or of any State relating to liquor has a right with respect to such vehicle or aircraft, that, before such claimant acquired his interest, or such other person acquired his right under such contract or agreement, whichever occurred later, the claimant, his officer or agent, was informed in answer to his inquiry, at the headquarters of the sheriff, chief of police, principal Federal internal-revenue officer engaged in the enforcement of the liquor laws, or other principal local or Federal law-enforcement officer of the locality in which such other person acquired his right under such contract or agreement, of the locality in which such other person then resided, and of each locality in which the claimant has made any other inquiry as to the character or financial standing of such other person, that such other person had no such record or reputation."

III. Paul Stiles, intervener, who loaned the automobile to Charles Stiles, had no knowledge that the automobile would be used by Charles Stiles for any purpose other than making the trip to California, for which specific purpose the car was loaned. Paul Stiles had no knowledge that Tick O'Bryan or Paul Spencer O'Bryan would obtain use of the automobile from Charles Stiles.

IV. Congress, in the enactment of Section 3617, subsection (b) (3), Title 18 U.S.C.A., intended it to apply to transactions between individuals and corporations, "great or small". United States v. One 1936 Model Ford V-8 Deluxe Coach, Commercial Credit Co., 307 U.S. 219, 237, 59 S.Ct. 861, 870, 83 L.Ed. 1249.

In United States v. One 1938 Model Chevrolet Coach, 5 Cir., 106 F.2d 985, the remission was allowed to the Automobile Sales Agency on a car which it had sold to one O'Kelley. O'Kelley represented that a used car, which he traded as the down payment, belonged to him. As a matter of fact, the used car belonged to Gee, who accompanied O'Kelley at the time the Chevrolet Coach was bought and he had a reputation for liquor law violations. The investigation was made by the dealer with respect to O'Kelley and when his credit rating was regarded not first class, Gee was asked to and did sign the note executed by O'Kelley for the purchase price of the Chevrolet car over and above the value of the used car traded in. It was shown that Gee had a bad reputation and that no investigation was made with respect to him.

The Court allowed the remission.

In United States v. One 1938 Buick Sedan, D.C., 29 F.Supp. 752, the car belonged to Helen Sears, a married woman, and was loaned by her to Steve Reynolds, for the avowed purpose of being used to keep an engagement with a lady friend.

Reynolds was shown to be a steady, hard working man. He was recommended to Mrs. Sears by her husband, who had worked with and knew Reynolds and Mrs. Sears had no reason to believe that the car was to be used in connection with any transportation of non-taxpaid liquor. The Court allowed the remission.

In the case at bar, it may well be that Paul Stiles should have investigated the reputation of his brother Charles Stiles, but it is undenied that the car was loaned to Charles Stiles to make the trip to California and that Paul Stiles knew nothing of the arrangements subsequently made between Charles and Tick O'Bryan, by which Charles left the Pontiac with Tick O'Bryan

and obtained a newer car to make the trip to California. To charge that Paul Stiles, by reason of his failure to investigate the reputation of his brother, with whom he lived, is precluded from having a remission of the forfeiture, because Paul Spencer O'Bryan subsequently obtained the Pontiac from his brother Tick, all without any knowledge on the part of either of the Stiles boys, would be a harsh application of the forfeiture statute, which the Court thinks is not called for.

Therefore, upon payment of costs and expenses incurred by the United States in the seizure and forfeiture of the automobile, the forfeiture will be remitted.